1  Robert C. Niesley, Bar No. 131373
   rniesley@wthf.com
2  Mary K. Ross, Bar No. 241783
   kross@wthf.com
3  Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
   2040 Main Street, Suite 300
4  Irvine, CA 92614
   Telephone:  949-852-6700
5  Facsimile:   949-261-0771

6  Attorneys for Plaintiff
   SURETEC INSURANCE COMPANY

7

8              UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11  SURETEC INSURANCE
    COMPANY, a Texas Corporation,          Case No. 09 CV 1560 H        CAB
12
                         Plaintiff,         SURETEC INSURANCE
13                                          COMPANY'S COMPLAINT FOR:
    v.
14                                          1) BREACH OF CONTRACT;
    TUSCANY VILLAS, L.L.C., a               2) IMPLIED INDEMNITY;
15  California limited liability            3) QUIA TIMET;
    corporation; SHAWN P. HEYL, an          4) SPECIFIC PERFORMANCE;
16  individual; GRANT W. KING, an           5) DECLARATORY RELIEF; AND
    individual; VIVIAN W. CHIANG,           6) STATUTORY
17  an individual; DICK D. CHIANG, an          REIMBURSEMENT
    individual; JAMES D. MEEHAN, an
18  individual; and KATHLEEN L.
    MEEHAN, an individual,
19
                         Defendants.
20

21         Plaintiff  SURETEC  INSURANCE  COMPANY  ("SureTec")  hereby

22  complains and alleges as follows:

23  ///

24  ///

25  ///

26  ///

27  ///

28

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

                                                          COMPLAINT

ORIGINAL

VIA FAX

FILED
2009 JUL 17  PM 3: 54
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

## JURISDICTION AND VENUE

1.     Plaintiff SureTec is a corporation  incorporated under the laws of the State of Texas, with its principal place of business in Houston, Texas.   All Defendants are citizens residing in the State of California or entities organized pursuant to the laws of the State of California with their principal places of business in the State of California.   This court has original jurisdiction under 28 U.S.C. 1332, in that this action is a civil action between citizens of different states in which the matter in controversy, exclusive of costs and interest, exceeds $75,000.00.

2.     Venue is proper in the United States District Court for the Southern District of California, because a substantial part of the events or omissions on which SureTec's claim is based occurred in the County of San Diego, State of California.

## GENERAL ALLEGATIONS

3.     Plaintiff SureTec is, and at all relevant times herein was, a corporation duly organized and existing under the laws of the State of Texas, with its principal place of business located in Houston, Texas.   At all relevant times, SureTec was duly licensed to conduct business in the State of California.   SureTec is an admitted surety insurer in the State of California, among other jurisdictions, has offices in the City and County of San Diego, and issues contract surety bonds, among other bonds, and lines of insurance in the course of its business.

4.     SureTec is informed, believes and thereon alleges that Defendant TUSCANY VILLAS, L.L.C. ("Tuscany") is, and at all times herein mentioned was, a limited liability corporation duly organized and existing under the laws of the State of California, with its principal place of business located in the City and County of San Diego, California.   At all relevant times, Tuscany was duly licensed to conduct business in the State of California.

5.     SureTec is informed, believes and thereon alleges that Defendant SHAWN P. HEYL ("Mr. Heyl") is a natural person residing in the City and County

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

- 2 -                                                                                    COMPLAINT

1  of San Diego, California.  SureTec is informed, believes and thereon alleges that

2  Mr. Heyl is an officer, employee, shareholder, agent and/or representative of

3  Tuscany.

4       6.    SureTec is informed, believes and thereon alleges that Defendant

5  GRANT W. KING ("Mr. King") is a natural person residing in the City of West

6  Hollywood, County of Los Angeles, California.  SureTec is informed, believes and

7  thereon alleges that Mr. King is an officer, employee, shareholder, agent and/or

8  representative of Tuscany.

9       7.    SureTec is informed, believes and thereon alleges that Defendant

10  DICK. D. CHIANG ("Mr. Chiang") is a natural person residing in the City of

11  Solana Beach, County of San Diego, California.  SureTec is informed, believes and

12  thereon alleges that Mr. Chiang is an officer, employee, shareholder, agent and/or

13  representative of Tuscany.

14       8.    SureTec is informed, believes and thereon alleges that Defendant

15  VIVIAN W. CHIANG ("Mrs. Chiang") is a natural person residing in the City of

16  Solana Beach, County of San Diego, California.  SureTec is informed, believes and

17  thereon alleges that Mrs. Chiang is an officer, employee, agent and/or

18  representative of Tuscany.

19       9.    SureTec is informed, believes and thereon alleges that Defendant

20  JAMES D. MEEHAN ("Mr. Meehan") is a natural person residing in the City of

21  Newport Beach, County of Orange, California.  SureTec is informed, believes and

22  thereon alleges that Mr. Meehan is an officer, employee, shareholder, agent and/or

23  representative of Tuscany.

24       10.    SureTec is informed, believes and thereon alleges that Defendant

25  KATHLEEN L. MEEHAN ("Mrs. Meehan") is a natural person residing in the City

26  of Newport Beach, County of Orange, California.  SureTec is informed, believes

27  and thereon alleges that Mrs. Meehan is an officer, employee, shareholder, agent

28  and/or representative of Tuscany.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

- 3 -

COMPLAINT

1       11.    Prior to December 2006, Tuscany, Mr. Heyl, Mr. King, Mr. Chiang,

2   Mrs. Chiang, Mr. Meehan and Mrs. Meehan (collectively "Indemnitors"), and each

3   of them, approached SureTec to request that SureTec issue surety bonds on behalf

4   of Tuscany in connection with its performance of real estate, development and/or

5   construction services, including, but not limited to, its development of the

6   subdivision known as Tuscany Villas Condominiums ("Development").

7       12.    As part of the consideration for issuing aforesaid bonds on behalf of

8   Tuscany, on or about December 18, 2006, the Indemnitors, and each of them,

9   executed a General Agreement of Indemnity ("GIA") in favor of SureTec.  A true

10  and correct copy of the GIA is attached hereto as **Exhibit A** and incorporated by

11  this reference.

12      13.    Pursuant to the terms of the GIA, Indemnitors, among other things,

13  agreed to jointly and severally indemnify SureTec against any and all liability for

14  losses and expenses of any kind or nature, including attorneys' fees and costs,

15  incurred by SureTec by reason of having executed or procured the execution of any

16  bonds, or by reason of the failure of Indemnitors to perform or comply with the

17  covenants, terms and conditions of the GIA.

18      14.    Pursuant to the terms of the GIA, Indemnitors, also agreed, among

19  other things, jointly and severally, to deposit collateral with SureTec upon demand

20  in an amount determined by SureTec to be sufficient to discharge and/or cover any

21  loss or anticipated losses that SureTec may incur in connection with any bonds

22  issued on behalf of Tuscany.

23      15.    Pursuant to the GIA, Indemnitors are obligated to indemnify SureTec

24  with respect to liability arising from "bonds written by or at the request of

25  [SureTec] as surety, co-surety, or re-insurer on behalf of Indemnitors, or any of

26  them, and any and all of their wholly or partially owned subsidiary companies,

27  subsidiaries of subsidiaries, proprietorships, divisions or affiliates, partnerships,

28  joint ventures or co-ventures in which any of the undersigned Indemnitors, their

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

- 4 -                                    COMPLAINT

1   wholly or partially owned subsidiary companies, subsidiaries of subsidiaries,
2   divisions, proprietorships, or affiliates, have any interest or participation whether
3   open or silent, jointly, severally, or in any combination with each other, now in
4   existence or which may hereafter be created or acquired." (*See* **Exhibit A,**
5   Paragraph 21.)

6   16.   Pursuant to the request of the Indemnitors, and in reliance upon the
7   Indemnitors' execution of the GIA, SureTec issued, among other bonds: (1)
8   Security Assessment Bond No. 4356725 ("Security Assessment Bond"), with a
9   penal sum of $128,880.00 and which names the Tuscany Villas Condominium
10   Owners Association ("Owners") as obligee; and (2) a State of California
11   Department of Real Estate Contribution to Working Capital bond for start-up funds
12   ("Start-Up Funds Bond") with a penal sum of $42,960.00 and which named the
13   Owners as obligee.  A true and correct copy of the Security Assessment Bond is
14   attached hereto as **Exhibit B** and incorporated by this reference.

15   17.   SureTec is informed, believes and thereon alleges that, following
16   issuance of the Bond, demands were made against Tuscany for the payment of the
17   required security assessments.

18   18.   Thereafter, Owners made demand on SureTec and the Security
19   Assessment Bond.  More specifically, the Owners demanded that SureTec remit
20   the penal sum of the Security Assessment Bond, based on Tuscany's failure to
21   fulfill its obligations to the Owners.

22   19.   On or about May 7, 2009, SureTec sent a written letter to the
23   Indemnitors, and each of them, wherein SureTec advised the Indemnitors that a
24   demand had been made upon the Security Assessment Bond and demanding that
25   the Indemnitors provide SureTec with any legal or factual basis for disputing
26   and/or denying the Owners' claim against the Security Assessment Bond.  A true
27   and correct copy of SureTec's May 7, 2009 letter is attached hereto as **Exhibit C**
28   and incorporated by this reference.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

- 5 -                                                                          COMPLAINT

1      20.    The Indemnitors, and each of them, failed to provide SureTec with a

2  legal or factual basis for disputing and/or denying the Owners' claim against the

3  Bond.

4      21.    Based on its investigation of the facts and records available, SureTec

5  understands that the Owners may make further demand on the Bond, or make

6  demand on the Start-Up Funds Bond.

7      22.    On or about June 26, 2009, SureTec sent another letter to the

8  Indemnitors, and each of them, demanding collateral in the amount of $171,840,

9  representing the penal sum of the Security Assessment Bond and the Start-Up

10  Funds Bond (collectively, "Bonds").  A true and correct copy of SureTec's June

11  26, 2009 letter is attached hereto as **Exhibit D** and incorporated by this reference.

12      23.    The Indemnitors, and each of them, failed to respond to SureTec's

13  June 26, 2009 letter and failed to deposit any collateral with SureTec as demanded

14  and as required under the GIA.

15      24.    SureTec, in addition to the losses, costs and expenses already incurred

16  in connection with the with claim against the Bonds alleged above, has incurred

17  and will continue to incur costs and expenses, including claim adjustment expenses

18  and attorneys' fees and costs, as a consequence of SureTec's issuance of the

19  Bonds, plus attorneys' fees and costs enforcing its rights under the GIA.

20                     **FIRST CAUSE OF ACTION**

21            **(Breach of Contract Against All Defendants)**

22      25.    SureTec incorporates by reference Paragraphs 1 through 24

23  hereinabove as though the same were set forth in full at this point.

24      26.    SureTec is informed, believes and thereon alleges that the

25  Indemnitors, and each of them, requested that SureTec issue the Bonds on behalf

26  of Tuscany.

27      27.    As partial consideration for SureTec's issuance of the Bonds, the

28  Indemnitors, and each of them, executed the GIA in favor of SureTec, wherein the

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

- 6 -               COMPLAINT

1   Indemnitors, and each of them, agreed to, among other things, reimburse SureTec

2   for all losses, costs and expenses SureTec incurs in connection with the Bonds, and

3   to deposit collateral with SureTec upon demand.

4       28.   SureTec is informed, believes and thereon alleges that demands were

5   made on Tuscany to perform all of their contractual and legal obligations to the

6   Owners.

7       29.   SureTec is informed, believes and thereon alleges that, due to

8   Tuscany's failure to fulfill its obligations, the Owners have demanded that SureTec

9   pay the required Security Assessments.

10       30.   By law, SureTec is obligated to investigate the Owners' claim, and

11   therefore has incurred costs in connection with the claims made by the Owners.

12       31.   SureTec has demanded that the Indemnitors, and each of them,

13   provide information to SureTec and deposit collateral in the amount of

14   $171,840.00 with SureTec, as the Indemnitors are required to do under the GIA.

15       32.   The Indemnitors, and each of them, failed and refused, and continue

16   to fail and refuse, to provide any information to or deposit any collateral with

17   SureTec.

18       33.   SureTec has performed all of the terms, covenants and conditions

19   required on its part to be performed under the terms of the GIA, or has been

20   excused from doing so by the Indemnitors.

21       34.   As a direct and proximate result of the breach of the GIA by the

22   Indemnitors, and each of them, SureTec has incurred losses, costs and expenses,

23   and will continue to incur losses, costs and expenses, in an amount according to

24   proof, along with attorneys' fees, expenses and costs incurred in enforcinb the

25   GIA.

26       35.   SureTec has been required to retain legal counsel to prosecute the

27   instant action. Pursuant to the terms of the GIA, SureTec is entitled to an award of

28   its attorneys' fees, costs and expenses incurred herein.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

- 7 -

COMPLAINT

1    WHEREFORE, SureTec prays for judgment against Defendants, jointly and

2    severally as set forth below.

3                          **SECOND CAUSE OF ACTION**

4                  **(Implied Indemnity Against All Defendants)**

5        36.    SureTec incorporates by reference Paragraphs 1 through 35

6    hereinabove as though the same were set forth in full at this point.

7        37.    The damages and expenses that SureTec has incurred and the damages

8    and expenses that SureTec will incur are caused entirely by the Indemnitors, and

9    each of them.   By virtue of the conduct of the Indemnitors, SureTec has been

10   required to bear a loss that, in law and in equity, it should not suffer and that should

11   be borne by the Indemnitors.

12       WHEREFORE, SureTec prays for judgment against Defendants, jointly and

13   severally as set forth below.

14                          **THIRD CAUSE OF ACTION**

15                  **(Quia Timet Against All Defendants)**

16       38.    SureTec incorporates by reference Paragraphs 1 through 37

17   hereinabove as though the same were set forth in full at this point.

18       39.    The Indemnitors, and each of them, are obligated under the doctrine of

19   Quia Timet to post collateral security and to reimburse SureTec for all losses and

20   expenses that have been incurred and will be incurred by SureTec as a consequence

21   of issuing the Bonds on behalf of Tuscany.

22       40.    SureTec is informed, believes and thereon alleges that the Indemnitors

23   and each of them are indemnitors, officers, employees, shareholders, agents and/or

24   representatives of Tuscany.

25       41.    SureTec believes, based upon its understanding of the financial status

26   of the Indemnitors and their unwillingness to indemnify SureTec or to post

27   sufficient collateral, that Indemnitors, and each of them, will attempt to avoid their

28   obligations to indemnify and hold SureTec harmless in accordance with the terms

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

COMPLAINT

1  of the GIA by transferring and conveying their assets to satisfy obligations other

2  than those covered by the GIA or otherwise included within the scope of the GIA.

3      42.    SureTec is informed, believes and thereon alleges that Indemnitors,

4  and each of them, have exhibited a willingness to ignore their obligations and may

5  transfer assets in derogation of the legal and equitable rights of SureTec.  If

6  Indemnitors are not enjoined immediately from transferring their assets, the assets

7  may be disposed of permanently, and Indemnitors will render themselves insolvent,

8  thereby irreparably harming SureTec.  As a result, SureTec has no adequate remedy

9  at law for the injuries suffered and the injuries it will continue to suffer.

10     43.    As a proximate result of the conduct of Indemnitors, and each of them,

11 SureTec has been or will be damaged so long as Indemnitors are able to evade their

12 obligations to SureTec under the GIA by transferring their assets.  The full amount

13 of this damage is not presently know by SureTec, which will amend its complaint

14 to state this amount when the same becomes known to it, or on proof of the

15 damages.

16     44.    SureTec is entitled to receive a temporary restraining order, a

17 preliminary injunction and a permanent injunction, all enjoining the Indemnitors,

18 and each of them, as well as their agents, servants, assignees, employees, officers,

19 and all persons or entities acting thereunder, in concert with, or for them from

20 transferring any assets absent further court order.

21     WHEREFORE, SureTec prays for judgment against all Defendants, jointly

22 and severally as set forth below.

23                    **FOURTH CAUSE OF ACTION**

24   **(Specific Performance of Indemnity Agreement Against All Defendants)**

25     45.    SureTec incorporates by reference Paragraphs 1 through 44

26 hereinabove as though the same were set forth in full at this point.

27     46.    SureTec, as surety, issued the Bonds on behalf of Tuscany at the

28 request of the Indemnitors, and each of them.

WATT, TIEDER,
HOPFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

COMPLAINT

1    47.    SureTec has incurred, and will continue to incur, losses and expenses

2    as a direct consequence of its issuance of the Bonds, and in satisfying Tuscany's

3    obligations under contracts bonded by SureTec.

4    48.    The Indemnitors entered into the GIA in consideration for the

5    execution of the Bonds, among other things.   SureTec has incurred, and will

6    continue to incur, losses, costs and expenses by virtue of and as a direct

7    consequence of its furnishing the Bonds for Indemnitors.   SureTec faces continuing

8    exposure in unliquidated amounts to current and future claimants.

9    49.    According to the terms of the GIA, "[p]ayment of loss or deposit of

10   collateral shall be made to [SureTec] by the Indemnitors as soon as liability exists

11   or is asserted against [SureTec], whether or not [SureTec] shall have made any

12   payment therefore."   (*See* **Exhibit A**, Paragraph 3.)

13   50.    The GIA also provides that "Indemnitors acknowledge that there is no

14   adequate remedy at law for the breach of this provision and that payment of

15   damages would not adequately compensate [SureTec] for such breach."   (*See*

16   **Exhibit A**, Paragraph 3.)

17   51.    SureTec has made demand upon the Indemnitors for reimbursement of

18   the losses, costs and expenses incurred by SureTec as a result of having issued the

19   Bonds on behalf of Tuscany.

20   52.    Despite SureTec's demands, the Indemnitors breached the GIA by

21   failing to reimburse SureTec or post collateral as required thereunder.

22   53.    SureTec believes that the Indemnitors will attempt to avoid their

23   obligations to indemnify and hold SureTec harmless under the terms of the GIA by

24   transferring and conveying their assets to satisfy obligations other than those

25   covered by the Bonds or otherwise included within the scope of the GIA.

26   54.    SureTec has no adequate remedy at law for the injuries currently being

27   suffered.   If the Indemnitors are not (1) ordered to indemnify SureTec for losses,

28   costs and expenses already incurred by SureTec as a result of having issued the

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

-- 10 --

COMPLAINT

Bonds, (2) ordered to post cash or collateral with SureTec in an amount sufficient to discharge any and all future claims made by persons on the Bonds, and/or (3) immediately enjoined from transferring their assets, the Indemnitors' assets will be disposed of permanently, and the Indemnitors will render themselves insolvent, all to the prejudice and irreparable harm of SureTec.

55.    As a proximate result of the conduct of the Indemnitors, and each of them, SureTec has been or will be damaged so long as the Indemnitors are able to circumvent their obligations to SureTec under the GIA by transferring assets.  The full amount of this damage has not yet been ascertained.

56.    SureTec's remedy at law is inadequate in that SureTec is exposed to liability that is not liquidated at this time.  Absent equitable relief, SureTec will be irreparably harmed.

57.    SureTec is entitled to an order compelling the Indemnitors, and each of them, to specifically perform pursuant to the terms of the GIA by:    (1) indemnifying and holding SureTec harmless for all of its losses, expenses, costs and fees that have been incurred, and continue to be incurred, in connection with its issuance of the Bonds; and (2) depositing collateral with SureTec for anticipated additional losses and expenses.

WHEREFORE, SureTec prays for judgment against Defendants, jointly and severally as set forth below.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief Against All Defendants)

58.    SureTec incorporates by reference Paragraphs 1 through 57 hereinabove as though the same were set forth in full at this point.

59.    An actual controversy has arisen and now exists between SureTec, on the one hand, and the Indemnitors, and each of them, on the other hand, in that SureTec contends, and the Indemnitors have failed and refused to acknowledge that the Indemnitors are obligated under the GIA to indemnify SureTec for the losses,

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

- 11 -                                                    COMPLAINT

costs, fees and expenses SureTec incurs in connection with the Bonds, and to post collateral with SureTec upon demand.

60.    SureTec desited a judicial determination of the respective rights and duties of SureTec and the Indemnitors, and each of them, with respect to the GIA. In particular, SureTec desires a declaration that, as a consequence of having executed the GIA, the Indemnitors, and each of them, are obligated to indemnify SureTec for all losses, costs, fees and expenses incurred by SureTec in connection with the Bonds and to post collateral with SureTec upon demand.

WHEREFORE, SureTec prays for judgment against Defendants, jointly and severally as set forth below.

## SIXTH CAUSE OF ACTION

### (Statutory Reimbursement against Defendant Tuscany Villas, L.L.C.)

61.    SureTec   incorporates   by   reference   Paragraphs   1   through   60 hereinabove as though the same were set forth in full at this point.

62.    As a consequence of having issued the Bonds on behalf of Tuscany, Tuscany becamse, and is now, obligated to reimburse SureTec for any amount of amounts SureTec disbursed or will disburse pursuant to the terms of the Bonds, the GIA and the contracts bonded by SureTec, including all of SureTec's costs, expenses and fees, in accordance with the provisions of California *Civil Code* section 2847.

WHEREFORE, SureTec prays for judgment against Defendants, jointly and severally, as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, SureTec prays for judgment as follows:

As to the First, Second and Third Causes of Action against all Defendants, and each of them:

1.    For damages in an amount according to proof, but not less than $171,840.00;

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

- 12 -                                    COMPLAINT

2.     A temporary restraining order, preliminary and permanent injunction enjoining Indemnitors, their agents, servants, employees, officers and assigns, and each of them, from transferring any assets absent further court order;

3.     For prejudgment interest thereon at the legal rate;

4.     For reasonable attorneys' fees and costs incurred herein, according to proof;

5.     For costs of suit herein; and

6.     For such other and further relief deemed necessary and proper by the Court.

As to the Fourth Cause of Action against all Defendants, and each of them:

1.     For an order compelling all Defendants, and each of them, to specifically perform pursuant to the terms of the GIA by:  (1) indemnifying and holding SureTec harmless for all of its losses, expenses, costs and fees that have been incurred, and continue to be incurred, in connection with its issuance of the Bonds; and (2) depositing collateral with SureTec in an amount sufficient to cover all anticipated additional losses and expenses;

2.     For reasonable attorneys' fees and costs incurred herein, according to proof;

3.     For costs of suit herein; and

4.     For such other and further relief deemed necessary and proper by the Court.

As to the Fifth Cause of Action against all Defendants, and each of them:

1.     A judicial declaration regarding the rights and obligations of the parties to the GIA.  Specifically, a judicial declaration that Indemnitors, and each of them, are obligated to (1) indemnify SureTec from losses, costs, fees and expenses incurred in connection with the Bonds; and (2) post collateral in with SureTec in an amount sufficient to satisfy SureTec's additional future losses and expenses that it anticipates it will incur in connection with the Bonds.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

- 13 -                                    COMPLAINT

1     2.    For reasonable attorneys' fees and costs incurred herein, according to

2  proof;

3     3.    For costs of suit herein; and

4     4.    For such other and further relief deemed necessary and proper by the

5  Court.

6     As to the Sixth Causes of Action against Defendant Tuscany:

7     1.    For damages in an amount according to proof;

8     2.    For punitive damages in an amount to be determined;

9     3.    For reasonable attorneys' fees and costs incurred herein, according to

10  proof;

11     4.    For costs of suit herein; and

12     5.    For such other and further relief deemed necessary and proper by the

13  Court.

14

15  Dated:  July 17, 2009        WATT, TIEDER, HOFFAR
                            & FITZGERALD, L.L.P.

16

17

18                      By: _____
                        Robert C. Niesley, Esq.

19                        Mary K. Ross, Esq.
                        Attorneys for Plaintiff

20                        SURETEC INSURANCE COMPANY

21

22  IRVINE 144257.1 102594.018

23

24

25

26

27

28

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

- 14 -           COMPLAINT

# EXHIBIT "A"



Tuscany Villas, LLC

## GENERAL AGREEMENT OF INDEMNITY

This General Agreement of Indemnity, herein called the "Agreement," is made and executed this 18th day of December, 2006 by the undersigned, herein called the "indemnitors," in favor of, and for the benefit of, SureTec Insurance Company and its co-sureties, reinsurers, and other sureties through whom it may procure the execution of bonds and undertaking, herein collectively called the "Company."

**Witnesseth:**

WHEREAS, in the transaction of business certain bonds, guaranties, obligations of suretyship, undertakings and other writings obligatory in the nature of a bond or ancillary thereto (all such bonds, guaranties, obligations, and undertakings being collectively referred to herein as "bonds") may have heretofore been, and may hereafter be, required by, for, or on behalf of the Indemnitors or any one or more of the Indemnitors in whose bonds the Indemnitors do hereby affirm to have a substantial material and beneficial interest, and as a condition precedent to the execution of any and all such bonds, the Company requires execution of this General Agreement of Indemnity.

NOW, THEREFORE, in consideration of these premises, and of the execution or continuance of such bonds, and for other good and valuable consideration, the Indemnitors do, for themselves, their heirs, executors, administrators, personal representatives, assigns and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the undersigned Indemnitors, have any interest or participation, whether open or silent, now in existence or which may hereafter be created or acquired, jointly and severally agree with, and make this General Agreement of Indemnity in favor of, and for the benefit of, the Company as follows:

1.   The Indemnitors shall pay to the Company, at its home office at 952 Echo Lane, Suite 450, in the City of Houston, Harris County, Texas, premiums, fees, and charges at the rates and at the times specified by Company, and will continue to pay the same when such premium, fee, or charge is annual and when additional premiums, fees, or charges are due for changes to underlying bonded obligations. Premiums are due and payable upon execution of bonds and upon renewal thereof. The Indemnitors shall be liable for additional renewal premiums hereunder until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or liability arising therefrom, and until the Indemnitors shall deliver to the Company at its home office in Houston, Texas, competent written evidence, satisfactory to the Company, of the Company's discharge from all liability on such bond or bonds. The Indemnitors shall also pay to Company, its affiliates, or to third parties, as the case may be, all underwriting, inspection, funds disbursement, escrow, special handling, filing, recording, and similar fees required or charged in connection with the underwriting, execution, or administration of any bonds.

2.   The Indemnitors shall indemnify and save the Company harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which the Company may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such bonds, or any renewals or continuations thereof or substitutes therefor, including, but not limited to, court costs, mediation and facilitation fees and expenses, fees and expenses of attorneys, accountants, adjusters, inspectors, experts, and consultants, whether on salary, retainer, in-house, or otherwise, and the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to enforce the obligation of any of the Indemnitors under this Agreement.   In the event the Company deems it necessary to respond to, make an investigation of, or settle, defend, or compromise a claim, demand or suit, the Indemnitors acknowledge and agree that all expense attendant to such response, investigation, settlement, defense, and compromise, whether incurred

Internally or otherwise, and whether or not Indemnitor has offered to defend Company, is included as an indemnified expense and shall be paid by Indemnitors to Company on demand. In the event of payments by the Company, a voucher, affidavit, bordereaux or other evidence of such payments are prima facie evidence of the propriety thereof, and of the Indemnitors' liability thereto to the Company. In the event that Indemnitors are covered by any insurance policy or policies for any matter or claim that may be brought against Company, or for which Company may have any exposure or liability, the coverage under such insurance policy or policies shall be primary. Indemnitors waive any and all claims of subrogation against Company.

3.    Payment of loss or deposit of collateral shall be made to the Company by the Indemnitors as soon as liability exists or is asserted against the Company, whether or not the Company shall have made any payment therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Company, or (b) such amount as the Company, in its sole judgment, shall deem sufficient to protect it from loss. The Company shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors would be obligated to indemnify the Company under the terms of this Agreement. If for any reason the Company shall deem it necessary to increase a reserve to cover any possible liability or loss, the Indemnitors will deposit with the Company, immediately upon demand, a sum of money equal to any increase thereof as collateral security to the Company for such liability or loss. Indemnitors acknowledge that there is no adequate remedy at law for the breach of this provision and that payment of damages would not adequately compensate Company for such breach. Accordingly, Company may compel Indemnitors to specifically perform these obligations pursuant to applicable law.

4.    The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its home office, 952 Echo Lane, Suite 450, Houston, Texas, 77024.

5.    The Company shall have the right to settle, compromise, prosecute, or defend any claim or action brought against the Company or any Indemnitor upon or relating to any bond or by any Indemnitor against a third party relating to any bonds or any interests granted herein. Company's decision with respect thereto shall be binding and conclusive upon the Indemnitors.

6.    The Company, and its designated agents, consultants, and representatives, shall at any and all reasonable times, have free access to the books and records of the Indemnitors. Indemnitors consent to Company's requests for, and use of, consumer credit reports and investigative consumer credit reports with respect to any of the individual Indemnitors. Any bank, depository, creditor, credit bureau or credit reporting agency, obligee of a bond, subcontractor, material supplier, claimant, prior surety, agent, or other person, firm or corporation possessing records or having information concerning the financial affairs and records or having information concerning the current or past financial affairs and operations of the Indemnitors is hereby authorized to furnish to the Company and its representatives, consultants, and affiliates, any such records or information requested by the Company. Indemnitors will execute, as requested by the Company, any additional documents necessary to cause the release and production of records and information authorized by this paragraph.

7.    In the event the Indemnitors, or any of them, shall (a) fail to pay any premium or underwriting charge or fee when due, or (b) fail to pay any amounts due hereunder, (c) abandon, forfeit or breach a bonded contract or obligation, or have been alleged to have abandoned, forfeited, or breached any such contract, (d) breach or be declared to have breached any bond issued by or at the request of Company, (e) have proceedings instituted against them, or any them, alleging that they are insolvent, or for the appointment of a receiver or trustee for the benefit of creditors, whether such Indemnitor(s) are insolvent or not, (f) have proceedings instituted against them, or any of them, the effect of which may be to deprive any of them of the use of any part of the equipment, funds, or assets used in connection with the work under bonded contract so as to hinder, delay or impede the normal satisfactory progress of the work, (g) fail to cooperate with Company in the investigation of claims made or threatened to be made against Company, or (h) the Company shall become insecure or unsure of the Indemnitors' willingness or ability to perform their obligations hereunder, and irrespective of whether Indemnitors have been declared in default under any bond or undertaking, the Company shall have the right, but not the obligation, to: (x) take possession of the work and under any other contract in connection with which the Company has given its bond or bonds within the purview of this Agreement and, at the expense of the Indemnitors, to continue performance of the contract(s), or cause, consent to, or arrange for, the completion thereof, (y) direct the obligees under such bonds to hold or forward contract proceeds and retainages due, earned, or to become due or earned, under the contract to the Company or its designees for disbursement or offset against other obligations of Indemnitors to

Company as it deems necessary or advisable, and/or (z) take such other and further action as the Company may, in its sole discretion, deem advisable, prudent, or necessary.

8.     Indemnitors shall pay interest on, and interest shall accrue on, all unpaid indebtedness of Indemnitors to Company at an interest rate equal to the lesser of: (a) eighteen percent (18%) per annum or (b) the Highest Lawful Rate (as such term is defined below). Interest on unpaid premiums shall not begin to accrue, however, until 45 days following the date of execution of a bond, or the renewal of a bond, by Company or its attorney-in-fact. Notwithstanding any other provision herein, the aggregate interest rate charged under this Agreement, including all charges, fees, or other payments in connection herewith or therewith deemed in the nature of interest under applicable law shall not exceed the Highest Lawful Rate. It is the intention of Company and Indemnitors to conform strictly to any applicable usury laws. Accordingly, if Company contracts for, charges, or receives any consideration which constitutes interest in excess of the Highest Lawful Rate, then any such excess shall be canceled automatically and, if previously paid, shall at Company's option be applied to the outstanding principal balance due hereunder or be refunded to Indemnitors. As used in this paragraph, the term "Highest Lawful Rate" means the maximum lawful interest rate, if any, that at any time or from time to time may be contracted for, charged, or received under the laws applicable to Company which are presently in effect or, to the extent allowed by law, under such applicable laws which may hereafter be in effect and which allow a higher maximum non-usurious interest rate than applicable laws now allow.

9.     As further security, the Indemnitors hereby grant to the Company a security interest in, and lien on, all of their equipment, machinery, plant, inventory, insurance policies, vehicles, tools, real property, and materials, as well as sums, claims, causes of action, accounts, accounts receivable, and rights due or to become due in connection with any contract, whether or not bonded by Company. This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of the Company in accordance with the Uniform Commercial Code and all similar statutes and a deed of trust or mortgage, as applicable, and may be filed by the Company without notice to perfect the security interests and liens granted herein. The Company may add schedules, property descriptions, and other documents to this Agreement as necessary and may sign a copy of this Agreement, or copy thereof, where required for filing as a Financing Statement or to otherwise perfect any interest granted herein. For the purpose of recording this Agreement, a photocopy of this Agreement acknowledged by a representative of Company before a Notary Public as being a true copy hereof shall be regarded as an original. The grant of the security interest and lien position, and any efforts to perfect same, are in addition to, and not in abrogation of, substitution for, nor restriction of any and all rights which the Company has or may have under this Agreement, at law, or in equity.

10.     The Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Company and its designees as their attorney-in-fact with the right, power, and authority, but not the obligation, to exercise all of the rights and powers of the Indemnitors assigned, transferred, and set over to the Company in this Agreement, and in the name of the Indemnitors, or any one or more of them, to make, endorse, execute, sign, and deliver any and all additional or other instruments and writings, including, but not limited to, assignments, financing statements, documents, instruments, checks, drafts, deposit, ACH, and wire transfer directives and orders, change of address notices, liens and releases thereof, applications, certificates, draw requests, orders, releases, and papers deemed necessary or desirable by the Company, and to collect the proceeds thereof, in order to give full effect not only to the intent and meaning of the obligations assumed, and the agreements made, by Indemnitors hereunder, and the assignments and conveyances made herein, but also the full protection intended to be herein given to the Company under all other provisions of this Agreement. The Indemnitors hereby ratify and confirm all acts and actions taken and done by the Company and its designees as such attorney-in-fact. The powers and authority granted herein shall not be affected by the disability or incapacity of the Indemnitors or any one or more of them.

11.     The Indemnitors understand and agree that the circumstances, financial or otherwise, of any one or more of the Indemnitors may change substantially over the period of this agreement and the Indemnitors therefore agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors and of the risks being engaged in so that the Indemnitors are always aware of the risks or hazards in continuing to act as Indemnitors. The Indemnitors hereby expressly waive any requirement for notice from the Company of any fact or information coming to the notice or knowledge of the Company affecting its rights or the rights or liabilities of the Indemnitors.

12.     In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle or compromise with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others and the Indemnitors

hereby expressly waive the right to be discharged by reason of the release of one or more of the Indemnitors, and hereby consent to any settlement or compromise that may hereafter be made.

13.  The Company is not required, by reason of any application for a bond or by reason of having issued a previous bond, bid bond, "bondability letter," or otherwise, to execute or procure the execution of or participate in the execution or renewal of any further bond or bonds. The Company, at its sole option and without assigning any reason therefor, may decline to execute or to participate in or procure the execution or renewal of any bond without impairing the validity of this Agreement or incurring any liability to Indemnitors. Any promise or agreement by Company or its representatives to issue or execute any bond or undertaking in the future shall be revocable at will by Company unless and until such bond or undertaking is properly authorized and issued by Company. Company's failure or refusal to issue final bonds after bid bonds or other proposal guarantees have been issued shall not excuse Indemnitors from their liability to indemnify and hold Company harmless from any loss or claim against such bid bond or proposal guarantee, nor shall such failure or refusal give rise to any cause of action in favor of Indemnitors for alleged losses of anticipated profits or other benefits.

14.  The Indemnitors acknowledge and agree this it is their sole responsibility to provide the proper forms for the bonds to be executed by the Company, and to review and approve any bond and undertaking executed by the Company on its own forms. Neither the Company, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Company with the proper forms or to object to forms furnished by the Company. It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Company for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Company and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Company issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Company as surety on the proposed bond, and neither the Company, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Company as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Company, for the timely delivery of any bond to the obligee. The Company and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the Company or its agents.

15.  The Indemnitors agree that the  Company's liability, if any, to the Indemnitors, or to any of them, on account of any acts or omissions by the Company or any of its consultants, affiliates, agents, or representatives (whether such acts or omissions arise in tort, negligence, trespass, breach of contract, by statute, or at law) arising out of or relating to any bond or any other conduct of the Company or its agents, representatives, employees, attorneys, attorneys-in-fact, adjustors, or consultants is hereby expressly limited to an amount not to exceed the premium actually paid to the Company for such bond.

16.  If the Company procures the execution of such bonds by or for other companies, including specifically, but without limitation, American Contractors Indemnity Company, Texas Bonding Company, or U.S. Specialty Insurance Company, or executes such bonds with co-sureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of, and may be enforced by, such other companies, co-sureties and reinsurers as their interests may appear. A written statement, signed by an officer of SureTec Insurance Company, attached to a copy of this Agreement before or after execution hereof by Indemnitors, confirming procurement of execution, co-surety, or reinsurance by such other companies, shall be prima facie evidence of the rights of such other companies hereunder and shall be binding on Indemnitors to the same extent as if such companies were named as the Company herein in the first instance. Any action to enforce this Agreement may be brought in the name of such other companies without the necessity of joinder of Company.

17.  The liability of the Indemnitors hereunder shall not be affected by the failure of the Indemnitors, or any one or more of them, to sign any contract,  bond, rider, undertaking, or this Agreement, nor by any claim that other indemnity, security, or collateral was to have been obtained, nor by the release of any indemnity, nor the return or exchange of any collateral, nor the forbearance or neglect in the enforcement of any requirements relating to the disbursement, administration or control or contract proceeds, that may have been obtained or occurred. If any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other Indemnitor. The Company may, but shall not be obligated to, accept other and further Agreements of Indemnity from Indemnitors or others, and may allow Indemnitors or additional Indemnitors to execute Agreements of

Indemnity in multiple counterpart..... It is understood and agreed that the execution of multiple, successive, replacement, or additional Agreements of Indemnity or the release or partial release or the capping of liability of some of the Indemnitors shall not operate to release Indemnitors. Indemnitors waive any and all claims that such other or additional Agreements of Indemnity constitute novations, substitutions or releases of the Indemnitors.

18. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, only upon written notice, of not less than thirty (30) days, sent by registered mail to the home office of the Company, 952 Echo Lane, Suite 450, Houston, Harris County, Texas 77024. In no event, however, shall any such termination notice operate to modify, bar, discharge, limit, affect or impair the liability of the party sending such termination notice, with respect to, upon or by reason of any and all such bonds executed prior to a date thirty (30) days after the date of the Company's actual receipt of such notice in its home office as aforesaid. Any such termination notice shall not operate to modify, bar, discharge, limit, affect or impair the liability of non-terminating Indemnitors, with respect to, upon or by reason of any and all bonds issued by Company.

19. The Indemnitors understand and agree that this document is a continuing agreement to Indemnify over an indefinite period and that bonds issued by the Company may vary widely in amounts and nature and that the Indemnitors will be bound by all such bonds, and any changes in the amounts of such bonds or underlying obligations, whether or not Company consents to such changes. The Indemnitors shall continue to remain bound under the terms of the Agreement even though the Company may from time to time, heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accept or release other agreements of indemnity, collateral, or conditions in connection with the procurement of bonds, from Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Company may have or acquire against the Indemnitors or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded Company under this Agreement.

20. This General Agreement of Indemnity is governed by, and shall be interpreted in accordance with, the laws of the State of California without giving effect to any law or rule that would cause the laws of any jurisdiction other than the State of California to be applied. All of Indemnitors' duties and obligations under this Agreement are due, payable, and performable in San Diego, San Diego County, California. If any provision or provisions, or portion thereof, of this Agreement shall be void or unenforceable under the laws of any jurisdiction governing its construction, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions, or portion thereof, were omitted and the other provisions shall remain in full force and effect.

21. This General Agreement of Indemnity applies to bonds written by or at the request of Company as surety, co-surety, or reinsurer on behalf of the undersigned Indemnitors, or any of them, and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the undersigned Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions, proprietorships, or affiliates, have any interest or participation whether open or silent; jointly, severally, or in any combination with each other; now in existence or which may hereafter be created or acquired.

22. The Indemnitors hereby warrant and represent the accuracy of all financial statements submitted or to be submitted to the Company, and covenant and agree that the assets described therein are dedicated to and imposed with a trust for the purpose of this Agreement of Indemnity and for the benefit of the Company.

23. Except where prohibited by law, Indemnitors hereby waive all right to claim any property, including homestead, as exempt from levy, execution, sale or other legal process secured or requested by Surety under the laws of the United States or of any state or province or of any other government.

24. All monies due and to become due under any contract or contracts covered by bonds issued by the Company are trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for payment of all obligations for which the Company would be liable under any of said bonds, which said trust also inures to the benefit of the Company for any liability or loss it may have or sustain under any of said bonds, and this Agreement shall constitute notice of such trust.

25. **THE UNDERSIGNED INDEMNITORS REPRESENT TO THE COMPANY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT CONSISTING OF THIS PAGE, THE PRECEDING PAGES, AND ANY PAGES WHICH FOLLOW, AND THAT THERE ARE NO OTHER PROMISES, AGREEMENTS OR UNDERSTANDINGS**

WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. THE UNDERSIGNED INDEMNITORS RECOGNIZE THAT THE ABOVE AND FOREGOING AGREEMENTS INCLUDE BROAD RIGHTS IN FAVOR OF COMPANY AND LIMITATIONS ON THE LIABILITY OF COMPANY AND ITS AGENTS FOR CERTAIN ACTS AND OMISSIONS, INCLUDING NEGLIGENT ACTS AND OMISSIONS. THE EFFECTIVE DATE OF THIS AGREEMENT OF INDEMNITY SHALL BE THE DAY AND YEAR FIRST ABOVE WRITTEN, REGARDLESS OF THE DATE OR DATES ON WHICH THE UNDERSIGNED MAY EXECUTE THIS AGREEMENT AND REGARDLESS OF WHETHER BONDS WERE ISSUED BY THE COMPANY BEFORE OR AFTER THE EXECUTION OR EFFECTIVE DATE OF THIS AGREEMENT. THE COMPANY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND OR UNDERTAKING FOR INDEMNITORS OR ANY OF THEM.

### Corporation or Partnership

Name: _____

By: _____
            Signature

Printed Name & Title: _____

_____
Street or P.O. Box    City          State/Zip

### Corporation or Partnership

Name: _____

By: _____
            Signature

Printed Name & Title: _____

_____
Street or P.O. Box    City          State/Zip

### Company or Sole Proprietorship

Name: _____

By: _____
            Signature

Printed Name & Title: _____

_____
Street or P.O. Box    City          State/Zip

### LP (with LLC as its GP)

Name of LLC: _____

By: _____
            Signature

Printed Name & Title, Signatory for LLC: _____

_____
Street or P.O. Box    City          State/Zip

### LLC

Name:  **Tuscany Villas, LLC**

By:     Premier Financial, LLC Managing Member
            Signature

Printed Name & Title:
**Shawn P. Heyl Managing Member**

_____
Street or P.O. Box    City          State/Zip

### Individual

Name: Shawn P. Heyl

By: _____
                Signature

14485 Caminito Lazanja San Diego, CA 92127
Street or P.O. Box   City       State/Zip

### Individual

Name: Grant W. King

By: _____
                Signature

2137 Sunset Plaza Dr. West Hollywood, CA 90069
Street or P.O. Box   City       State/Zip

### Individual

Name: Dick B. Chiang

By: _____
                Signature

725 Santa Olivia, Solano Beach, CA 92075
Street or P.O. Box   City       State/Zip

### Individual

Name: Vivian W. Chiang

By: _____
                Signature

725 Santa Olivia Solano Beach, CA 92075
Street or P.O. Box   City       State/Zip

### Individual

Name: Andy M. Lee

By: _____
                Signature

3009 Payne Ranch Rd. Chino Hill, CA 91709
Street or P.O. Box   City       State/Zip

### Individual

Name: Joyce S. Lee

By: _____
                Signature

3009 Payne Ranch Rd. Chino Hill, CA 91709
Street or P.O. Box   City       State/Zip

### Individual

Name: James D. Meehan

By: _____
                Signature

542 S. Bayfront Newport Beach, CA 92662
Street or P.O. Box   City       State/Zip

### Individual

Name: Kathleen L. Meehan

By: _____
                Signature

542 S. Bayfront Newport Beach, CA 92662
Street or P.O. Box   City       State/Zip

## Individual Notary Acknowledgment

State of _California_ §
                     §
County of _Orange_   §

On this _19th_ day of _December_ 20_06_, before me personally appeared*

_Dick D. Chiang, Vivian W. Chiang, James D. Meehan & Kathleen E. Meehan_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within and foregoing instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s) executed the instrument.

WITNESS my hand and official seal

[Notary seal:
KATHLEEN E. LARSON
Commission # 1652828
Notary Public - California
Orange County
My Comm. Expires Mar 18, 2010]

_Kathleen E Larson_
Notary Public
Commission Expires _Mar 18 2010_

## Individual Notary Acknowledgment

State of _____ §
                         §
County of _____ §

On this _____ day of _____ 20___       before me personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within and foregoing instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s) executed the instrument.

WITNESS my hand and official seal

_____
Notary Public
Commission Expires

## Individual Notary Acknowledgment

State of _____ §
                         §
County of _____ §

On this _____ day of _____ 20___       before me personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within and foregoing instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s) executed the instrument.

WITNESS my hand and official seal

_____
Notary Public
Commission Expires

General Agreement of Indemnity-CA
Rev 11/16/2005

Page 8 of 10

**Individual**

Name: Shawn P. Heyl █████████

By: _____
                    Signature

14485 Caminito Lazanja San Diego, CA 92127
Street or P.O. Box   City         State/Zip

**Individual**

Name: Grant W. King █████████

By: _____
                    Signature

1137 Sunset Plaza Dr. West Hollywood, CA 90069
Street or P.O. Box   City         State/Zip

**Individual**

Name: Dick D. Chiang █████████

By: _____
                    Signature

725 Santa Olivia  Solano Beach, CA 92075
Street or P.O. Box   City         State/Zip

**Individual**

Name: Vivian W. Chiang █████████

By: _____
                    Signature

725 Santa Olivia Solano Beach, CA 92075
Street or P.O. Box   City         State/Zip

**Individual**

Name: Andy M. Lee █████████

By: _____
                    Signature

3009 Payne Ranch Rd. Chino Hill, CA 91709
Street or P.O. Box   City         State/Zip

**Individual**

Name: Joyce C. Lee █████████

By: _____
                    Signature

3009 Payne Ranch Rd. Chino Hill, CA 91709
Street or P.O. Box   City         State/Zip

**Individual**

Name: James D. Meehan █████████

By: _____
                    Signature

542 S. Bayfront Newport Beach, CA 92862
Street or P.O. Box   City         State/Zip

**Individual**

Name: Kathleen L. Meehan █████████

By: _____
                    Signature

542 S. Bayfront Newport Beach, CA 92862
Street or P.O. Box   City         State/Zip

General Agreement of Indemnity-CA

## Individual Notary Acknowledgment

State of _CALIFORNIA_ §
County of _LOS ANGELES_ §

On this _9th_ day of _JAN_ 20 _07_, before me personally appeared

_GRANT W KING_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within and foregoing instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s) executed the instrument.

WITNESS my hand and official seal

JASON MIRZA
Commission # 1454272
Notary Public - California
Los Angeles County
My Comm. Expires Dec 4, 2007

Notary Public
Commission Expires _12.04.07_

## Individual Notary Acknowledgment

State of _____ §
County of _____ §

On this _____ day of _____ 20____ before me personally appeared

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within and foregoing instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s) executed the instrument.

WITNESS my hand and official seal

Notary Public
Commission Expires

## Individual Notary Acknowledgment

State of _____ §
County of _____ §

On this _____ day of _____ 20____ before me personally appeared

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within and foregoing instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s) executed the instrument.

WITNESS my hand and official seal

Notary Public
Commission Expires

General Agreement of Indemnity-CA

EXHIBIT "B"

This is an annual and it must
be renewed until released by
the HOA

STATE OF CALIFORNIA

DEPARTMENT OF REAL ESTATE
SUBDIVISIONS

**SURETY BOND**
*(Regulation 2792.9)*

RE 643J (Rev. 5/05)

| BOND NUMBER | PREMIUM |
|---|---|
| 4356725 | $3,078.00 |

KNOW ALL MEN BY THESE PRESENTS:

That we, Tuscany Villas, LLC _____ (Name of Subdivider)

as Principal, and SureTec Insurance Company _____ (Name of Surety),

a corporation organized and doing business under and by virtue of the laws of the State of _____ TX _____

and duly licensed to conduct a general Surety business in the State of California as Surety, are firmly held and bound unto

Tuscany Villas Condominium Owners Association _____ (Name of Association),

a community association described in Civil Code Section 1363, as Obligee, in the penal sum of One Hundred & Twenty

Eight Thousand Eight Hundred and Eighty 00/100 _____ Dollars ($ 128,880.00 ), for the payment of which we bind

ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally firmly by these presents.

WHEREAS, this bond is executed, issued, furnished and otherwise given on behalf of the Principal, an applicant for a public report applied for or to be issued by the California Department of Real Estate, in compliance with Section 2792.9 of Chapter 6, Title 10, California Code of Regulations, to secure the prompt and faithful performance of Principal's obligation to Obligee under any form RE 643 (Assessment Security Agreement provisions of the Assessment Security Agreement and Instructions to Escrow Depository) executed by the Principal for the benefit of the Association.

NOW THEREFORE, the condition of the obligation is such, that, if the said Principal shall promptly and faithfully perform, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

Surety, for value received, does hereby waive the right granted to Surety under California Civil Code Section 2845 to require that Obligee proceed independently against Principal to enforce this obligation, but reserves to itself any right under said Section 2845 to require that Obligee proceed jointly against Principal and Surety in any such action.

IN WITNESS WHEREOF, the seal and signature of said Principal is hereto affixed and the corporate seal and the name of the said Surety is hereto affixed and attested by its duly authorized Attorney-In-Fact at _____ CANOGA PARK _____ California this _____ 21st _____ day of _____ December _____ 2006 .

NAME OF PRINCIPAL (TYPE OR PRINT)
Tuscany Villas, LLC
SIGNATURE OF PRINCIPAL
►

NAME OF SURETY (TYPE OR PRINT)
SureTec Insurance Company
SIGNATURE OF SURETY
►

Attorney-in-fact James R Olsen

POA #: 510031

# SureTec Insurance Company
## LIMITED POWER OF ATTORNEY

*Know All Men by These Presents,* That SURETEC INSURANCE COMPANY (the "Company"), a corporation duly organized and existing under the laws of the State of Texas, and having its principal office in Houston, Harris County, Texas, does by these presents make, constitute and appoint

James R. Olsen

of Canoga Park, CA its true and lawful Attorney(s)-In-Fact, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver any and all bonds, recognizances, undertakings or other instruments or contracts of suretyship to include waivers to the conditions of contracts and consents of surety, providing the bond penalty does not exceed

Five Million Dollars and no/100 ($5,000,000.00)

and to bind the Company thereby as fully and to the same extent as if such bonds were signed by the President, sealed with the corporate seal of the Company and duly attested by its Secretary, hereby ratifying and confirming all that the said Attorney(s)-In-Fact may do in the premises. Said appointment shall continue in force until __10/31/07__ and is made under and by authority of the following resolutions of the Board of Directors of the SureTec Insurance Company:

*Be it Resolved,* that the President, any Vice-President, any Assistant Vice-President, any Secretary or any Assistant Secretary shall be and is hereby vested with full power and authority to appoint any one or more suitable persons as Attorney(s)-In-Fact to represent and act for and on behalf of the Company subject to the following provisions:

*Attorney-In-Fact* may be given full power and authority for and in the name of and of behalf of the Company, to execute, acknowledge and deliver, any and all bonds, recognizances, contracts, agreements or indemnity and other conditional or obligatory undertakings and any and all notices and documents cancelling or terminating the Company's liability thereunder, and any such instruments so executed by any such Attorney-In-Fact shall be binding upon the Company as if signed by the President and sealed and effected by the Corporate Secretary.

*Be it Resolved,* that the signature of any authorized officer and seal of the Company heretofore or hereafter affixed to any power of attorney or any certificate relating thereto by facsimile, and any power of attorney or certificate bearing facsimile signature or facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached. *(Adopted at a meeting held on 20th of April, 1999.)*

*In Witness Whereof,* SURETEC INSURANCE COMPANY has caused these presents to be signed by its President, and its corporate seal to be hereto affixed this 20th day of June, A.D. 2005.

SURETEC INSURANCE COMPANY

By: _____
B.J. King, President

State of Texas
County of Harris } ss:

On this 20th day of June, A.D. 2005 before me personally came B.J. King, to me known, who, being by me duly sworn, did depose and say, that he resides in Houston, Texas, that he is President of SURETEC INSURANCE COMPANY, the company described in and which executed the above instrument; that he knows the seal of said Company; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Company; and that he signed his name thereto by like order.



Michelle Denny
Notary Public
State of Texas
My Commission Expires
August 27, 2008

*Michelle Denny*
Michelle Denny, Notary Public
My commission expires August 27, 2008

I, M. Brent Beaty, Assistant Secretary of SURETEC INSURANCE COMPANY, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney, executed by said Company, which is still in full force and effect; and furthermore, the resolutions of the Board of Directors, set out in the Power of Attorney are in full force and effect.

Given under my hand and the seal of said Company at Houston, Texas this __21__ day of __December__, __2006__ A.D.

_____
M. Brent Beaty, Assistant Secretary

Any instrument issued in excess of the penalty stated above is totally void and without any validity.
For verification of the authority of this power you may call (713) 812-0800 any business day between 8:00 am and 5:00 pm CST.

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of ___CALIFORNIA_____ ) ss.

County of ___LOS ANGELES____ ) ss.

On _12/21/2006_ , before me, Bryant Evan Spiegler - NOTARY PUBLIC
    Date            Name and Title of Officer (e.g., "Jane Doe, NOTARY PUBLIC"

personally appeared ___James R Olsen -    ATTORNEY-IN-FACT___

☒ personally known to me
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> BRYANT EVAN SPIEGLER
> Commission # 1689488
> Notary Public - California
> Los Angeles County
> My Comm. Expires Aug 24, 2010

WITNESS my hand and official seal.

_____
Signature of Notary Public

Place Notary Seal Above

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☒ Attorney in fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer is Representing: _____

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org     Prod. No. 5907     Reorder: Call Toll-Free 1-800-876-6827

EXHIBIT "C"



May 7, 2009

Tuscany Villas LLC
  Attn: Grant King
    Agent for Service of Process
313 N. Birch Street
Santa Ana  CA  92701

Premier Financial Services, LLC              fax: 858.259.7773
11975 El Camino Real  Suite 103
San Diego  CA  92130

Shawn P. Heyl
14485 Caminito Lazanja
San Diego  CA  92127

Dick D. & Vivian W. Chiang
725 Santa Olivia
Solano Beach  Ca  92075

Andy M. & Joyce C. Lee
3009 Payne Ranch Road
Chino Hill  CA  91709

James D. & Kathleen L. Meehan
542 Bayfront
Newport Beach  CA  92662

Re:   Principal:   Tuscany Villas
      Bond Nos:   4356725 & 4356726

Ladies and Gentlemen:

On or about December 18th, 2006, as consideration for issuing bonds on behalf of
Tuscany Villas, you signed an indemnity agreement promising (among other things) to
indemnify and hold SureTec harmless from any loss, cost or expense which the Surety
may sustain as a result of having issued the two Department of Real Estate bonds
mentioned above.

SureTec has received a demand from an attorney for the Tuscany Villas Homeowners
Association stating that the developer has not paid the security assessments.
Consequently, the HOA is making claim against bond 4367526 in the amount of
$92,887.80. I am enclosing a copy of the demand forward to me by the HOA's attorney.

Tuscany Villas
Page 2
May 7, 2009

California Code of Regulations (CCR) Title 10, Chapter 5, Subchapter 7.5, Section 2695.10(b) requires the surety to accept or reject all claims within 40 calendar days of receipt of proof of claim. SureTec received proof of claim on or about April 27, 2009. If you dispute the claim, please provide the legal and factual basis for your dispute. SureTec must provide the legal and factual basis for such denial in accordance with the CCR. The full text of this CCR section states:

"(b) As soon as possible, but in no event later than forty (40) calendar days after receipt by the insurer of proof of claim, and provided the claim is not in litigation or arbitration, the insurer shall accept or deny the claim, in whole or in part, and affirm or deny liability. Every insurer that denies or rejects a claim in whole or in part, or disputes liability or damages, shall provide to the claimant a written statement listing all bases for such rejection or denial, and the factual and legal bases for each reason given for each rejection or denial, which are within the insurer's knowledge. If an insurer's denial in whole or in part is based on a specific statute or specific bond provisions, the denial shall include reference thereto and provide an explanation of the application of the statute or bond provision to the claimant. Written notification pursuant to this subsection shall also include a notification that the claimant may have the matter reviewed by the California Department of Insurance and shall provide the address and telephone number of the unit of the Department which reviews complaints regarding claims practices."

It is imperative I receive your written response promptly. If I have not received it on or before May 18th, 2009 I will evaluate the claim based on the documents and information provided by the HOA's attorney and resolve the claim in SureTec's best interests. In addition, immediate action will be taken to enforce all of the provisions of the general indemnity agreement which you signed in your capacity as either a member of the LLC or personally.

I look forward to hearing from you promptly.

Cordially,

Cynthia J. Vincent
Director, West Coast Claims
619.400.4113
cvincent@suretec.com

Encs:  Cc of claim
       Cc of gia

EXHIBIT "D"



June 26, 2009

Shawn P. Heyl                          Grant W. King
14485 Caminito Lazanja                 2137 Sunset Plaza Dr.
San Diego  CA  92127                   West Hollywood, CA 90069

Dick D. and Vivian W. Chiang           Andy M. and Joyce C. Lee
725 Santa Olivia                       3009 Payne Ranch Rd.
Solano Beach  CA  92075                Chino Hill, CA 91709

James D. & Kathleen L. Meehan
542 S. Bayfront
Newport Beach  CA  92662

Tuscany Villas LLC                     *Facsimile:  858-259-7773*
c/o Premier Financial LLC
11975 El Camino Real, Suite 103
San Diego  CA  92130

Re:   Tuscany Villas Bond Numbers 4356725 and 4356726
      Claim by HOA

Ladies and Gentlemen:

In May, you were informed of the claim by the HOA against the bonds issued by
SureTec.

Since that letter, I received a call from Mr. Meehan who referred me to his lawyer, Mr.
Brickman.  Mr. Brickman informed me of some of the disputes between you and the
lender on this project.  However, none of that protects SureTec from the claim by the
HOA, nor am I able to assert any of those arguments as defenses to the HOA claim.  I
have made attempts to contact Mr. Meehan and Mr. Brickman via email but have not
received a response.

I am enclosing a copy of the indemnity agreement for your review.  The agreement
provides SureTec with fairly harsh remedies against all indemnitors in the event the
surety is required to pay a claim, including the right to record deeds of trust against your
properties.  A UCC1 statement will be filed next week with the Secretary of State since
there has been nothing to indicate you have resolved this claim with the HOA.

SureTec absolutely relied on the promises you all made to hold us harmless and protect
us against all loss, cost or expense which we may incur as a result of having issued the

bonds for Tuscany Villas. This letter constitutes demand against each of you in your personal capacities for collateral in the amount of $171,840 which represents the penal sums of the two bonds. This is a joint and several demand pursuant to the terms of the indemnity agreement. If I have not received the collateral by July 10th, I will assume you intend to ignore the demand and will take steps to enforce all of the provisions of the indemnity agreement.

Alternatively, if you are able to resolve this claim directly with the HOA and they rescind the claim before July 10th, the collateral demand will become moot.

Cordially,

Cynthia J. Vincent
Director, West Coast Claims
Direct Line:  619.400.4113
Facsimile:  619.400.4101
E-mail:  cvincent@suretec.com

Encs:   Copy of General Indemnity Agreement

cc:     J.R. Olson
        Dave Melman, San Diego Surety

**VIA FAX** **ORIGINAL**

JS 44   (Rev. 12/07)   CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
SURETEC INSURANCE COMPANY, a Texas Corporation

### DEFENDANTS
2009 JUL 17 PM 3:53

TUSCANY VILLAS, L.L.C. a California limited liability corporation; (SEE ATTACHMENT FOR ADD'L PARTIES)
SOUTHERN DISTRICT OF CALIFORNIA

**(b)** County of Residence of First Listed Plaintiff   Harris
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.
DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert C. Niesley and Mary K. Ross, WATT, TIEDER, HOFFAR & FITZGERALD, 2040 Main St, #300, Irvine, CA 92614, 949-852-6700

Attorneys (If Known)

**'09 CV 1560 H   CAB**

### II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 365 Personal Injury - Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | **PERSONAL PROPERTY** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 370 Other Fraud | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 371 Truth in Lending | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 380 Other Personal Property Damage | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 385 Property Damage Product Liability | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 465 Other Immigration Actions | | |
| ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 442 Employment | Habeas Corpus: | | | |
| ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

### V. ORIGIN   (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332
Brief description of cause:
Breach of Contract

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ $172,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE                          DOCKET NUMBER

DATE   07/17/2009
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # 3116   AMOUNT 350.   APPLYING IFP   JUDGE   MAG. JUDGE

7/17/09

| PETITIONER/PLAINTIFF: SURETEC INSURANCE COMPANY RESPONDENT/DEFENDANT: TUSCANY VILLAS. L.L.C., et al. | CASE NUMBER: |
|---|---|

## ATTACHMENT TO CIVIL COVER SHEET

*SURETEC INSURANCE COMPANY v. TUSCANY VILLAS, LLC., et al.*

## ADDITIONAL DEFENDANTS:

SHAWN P. HEYL, an individual; GRANT W. KING, an individual; VIVIAN W. CHIANG, an individual; DICK D. CHIANG, an individual; JAMES D. MEEHAN, an individual; and KATHLEEN L. MEEHAN, an individual

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS003116
Cashier ID: sramirez
Transaction Date: 07/17/2009
Payer Name: TIME MACHINE NETWORK
-----------------------------------
CIVIL FILING FEE
 For: SURETEC INS V. TUSCANY VILLAS
 Case/Party: D-CAS-3-09-CV-001560-001
 Amount:        $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 78323
 Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```